IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
At Huntington

**DEBRA PARSONS, M.D.,**

      **Plaintiff,**

**v.**                                                          Case No: 03:9-cv-00771

**BEST BUY STORES, L.P.,**

      **Defendant.**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ADVERSE INFERENCE INSTRUCTION**

Plaintiff submits the instant Memorandum of Law in support of her "Motion for Adverse Inference Instruction."

**I.    STATEMENT OF FACTS**

On December 21, 2007, Plaintiff was injured when a pallet jack full of computer equipment and office furniture was spilled onto her while shopping at Best Buy. At the time of the incident, Best Buy maintained surveillance cameras in the store. *See* Depo. of Jessica Watts at 30, Exhibit A. According to manager Brian Cornwell, Best Buy's video cameras focus on various locations within the store including cash registers, the front door and warehouse. *See* Depo. of Brian Cornwell at 17, Exhibit B. Scott Smith testified that there was a surveillance video aimed directly at the location of the loading dock where the pallet was originally loaded. *See* Depo. of Scott Smith at 33, Exhibit B. According to Mr. Smith, this camera should have shown the employees stacking the equipment onto the pallet. *Id*. at 33, 34.

Further, Mr. Cornwell explained how Best Buy maintained a rotating camera that would have recorded the gaming and audio department area. *See* Depo. of Brian Cornwell at 42,

Exhibit B. Notably, this was the area where Dr. Parsons was injured. Mr. Smith explained that the surveillance camera should have captured the incident. *Id.* at 29. He further testified that the camera should have captured at least some of the footage of the pallet being stacked and the location where Dr. Parsons left customer service and exited the front door. *Id.* at 35.

In addition, after Dr. Parsons was injured, she and her husband went to the front of the store near the customer service area. Jared Marsh testified how after the incident occurred, Best Buy pointed the rotating camera directly at Dr. Parsons and her husband. *See* Depo. of Jared Marsh at 36, Exhibit B. As Mr. Marsh was leaving the store, he personally observed the video monitor and saw live footage of Dr. Parsons and her husband from where the camera was focused onto them. *Id.* at 37.

In their supplemental response to Plaintiff's second set of discovery, Defendant Best Buy stated that "former General Manger of Best Buy Store # 573, Michael Moore, reviewed the surveillance video footage from December 21, 2007." *See* Defendant Best Buy Stores, L.P.'s Supplemental Responses to Plaintiff's Second Set of Interrogatories and Requests for Production, Interrogatories Nos. 2, 3, 4 and 5, Exhibit D.

Immediately after the accident, Dr. Parsons requested that Best Buy preserve the videotaped surveillance footage:

> Q: Debra, the day after the accident you spoke with a manager from Best Buy?
> A: Yes.
> Q: And the manager admitted that this accident was their fault?
> A: Yes.
> Q: And at that time you told the manager to preserve all videos inside the store?
> A: Yes, I've asked about the videos since the beginning.

Q: And you also asked a company by the name of ESIS…to preserve all videos inside the store?

A: Yes.

*See* Depo. of Dr. Parsons at 140-141, Exhibit C.

Q: At some point did you learn that, or did the folks from ESIS tell you that the videos had been most likely recorded over?

A: Yes.

Q: That they keep them for 30 days and then record over them?

A: Yes.

Q: And so is it your understanding they didn't keep the videos per your direction?

A: Yes.

*Id.*

In addition to a direct request of Dr. Parsons, Best Buy's third party administrator, ESIS, inquired of Best Buy's management about the existence of videotape footage on the night of the incident:

Q: When you called ESIS did they ask you about the surveillance video?

A: Yes, they did.

Q: And what did you tell them?

A: At the time I told them that there should be but that our surveillance cameras are not the best and they don't get down every aisle so there's no way of knowing exactly what video there was.

Q: Did anybody look for it?

A: I did not.

Q: But you told ESIS that there should be video?

A: Right.

*See* Depo. of Brian Cornwell at 16-17, Exhibit B.

Notwithstanding Plaintiff's specific request to preserve the video footage and the inquiries from its third party administrator, Best Buy confirmed in response to requests for admissions that the footage was erased:

> 8. Admit that Best Buy Stores, L.P. did not preserve any videotaped surveillance footage taken inside Best Buy store #573 on December 21, 2007 at approximately 10:52 p.m.
>
> **ANSWER:** Deny. Surveillance footage was preserved for approximately 30 days. The videotape containing the footage was then reused.

*See* Defendant Best Buy Stores, L.P.'s Responses to Plaintiff's First Set of Requests for Admissions and Second Set of Interrogatories and Requests for Production of Documents, Request No. 8, Exhibit E.

## II. ARGUMENT AND LEGAL AUTHORITY

**1. Standard for Adverse Inference Instruction.**

"Parties have a duty to preserve evidence during litigation and when a party is actually aware of or reasonably should anticipate litigation." *Green v. CSX Hotels, Inc.*, 650 F.Supp.2d 512 (S.D.W.Va. 2009), citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). If a party does not control the evidence, "he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Id*.

As articulated in this Court's decision of *Henson v. Peachtree Doors & Windows, Inc.*, 2009 WL 3424173 (S.D.W.Va. 2009), the following four factors should be considered when determining whether to issue an adverse inference instruction:

1. The party's degree of control, ownership, possession, or authority over the destroyed evidence;

2. The amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial;

3. The reasonableness of anticipating that the evidence would be needed for litigation; and

4. If the party controlled, owned, possessed or had authority over the evidence the party's degree of fault in causing the destruction of the evidence.

*Henson* citing Syl. Pt. 2 of *Tracy v. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999).

In the *Henson* case, this Court ruled on the plaintiff's motion for an adverse inference instruction regarding lost training records. In *Henson*, the safety director testified that he had reviewed the plaintiff's training records "because he was aware of the current litigation, and that he flagged certain sections." *Id*. The records were shipped to company headquarters and then lost. *Id*. Henson argued that "under the circumstances he is entitled to an instruction that the jury may infer that any information contained within the training file would have been adverse to SNE's claims or defenses." As this Court wrote:

> Each of these factors is met in the present case and weighs in favor of granting the instruction. Greg Meadows testified at deposition that he reviewed the training file, knowing it concerned litigation, the he sent the file to corporate headquarters and that it was subsequently lost. The file was particularly within the control of the Defendant, and there is no reason to blame any other entity for its loss. The loss of the document creates the risk of substantial prejudice to Plaintiff, as his own training is sure to be an issue in this litigation. Plaintiff is entitled to an adverse inference instruction at trial, regarding the lost training documents referred to by Greg Meadows. This portion of the Plaintiff's motion is GRANTED.

*Id*. In this case, as in *Henson*, an adverse inference instruction is warranted.

**2.     Application of the *Tracy v. Cottrell* factors to the instant case.**

The record clearly demonstrates that each element of the four factor test as set forth in *Tracy* is satisfied. First, at all relevant times, Best Buy had complete control, ownership,

possession and authority over the destroyed video footage. The video never left the control of Best Buy. As stated in their response to the above Request for Admission, No. 8, the videotape containing the footage was reused and, thus, the evidence destroyed.

Second, the degree of prejudice suffered by the non-offending party is substantial. At trial, Best Buy will attempt to downplay the incident and trivialize Plaintiff's injuries. Had the videotape evidence been preserved, Plaintiff would have been able to show the height of the load as well as the contents. Plaintiff would have been able to show the distance from which the load fell and an approximate weight of the materials that hit her. Moreover, Plaintiff would have been able to show her reaction to the incident. Best Buy will argue at trial that only one or two boxes fell a short distance and hit her. Best Buy will also argue that all of her injuries are attributed to pre-existing degenerative changes and not the accident. Plaintiff's inability to present the videotaped evidence to the jury has caused her substantial prejudice.

Third, Best Buy reasonably knew that the evidence may be needed for litigation. As demonstrated above, the day of the incident, Best Buy's third party administrator – ESIS – specifically inquired about the subject video footage and whether it was preserved. *See* Depo. of Brian Cornwell at 16-17, 23, Exhibit B. Dr. Parsons had made repeated requests to both Best Buy and ESIS to preserve the video. *See* Depo. of Dr. Parsons at 140-141, Exhibit C. Best Buy knew of the incident and knew that Dr. Parsons was injured. Best Buy reasonably should have anticipated litigation.

Fourth, only Best Buy is at fault for the destruction of the videotape. Despite requests by Dr. Parsons to preserve the video and despite inquiries by ESIS, Best Buy unilaterally made the decision to reuse and tape over the video footage. Best Buy had every opportunity to preserve the evidence and chose not to do so.

WHEREFORE, the Plaintiff respectfully requests that this Court enter an adverse inference instruction advising the jury that they can then infer that the information contained in the videotape surveillance footage would have contained evidence unfavorable to Best Buy's defense.

**DEBRA PARSONS, M.D.**
*By counsel*

/s/ C. Benjamin Salango
C. Benjamin Salango (WVSB #7790)
**PRESTON & SALANGO, P.L.L.C.**
213 Hale Street
Post Office Box 3084
Charleston, West Virginia 25331
Phone: (304) 342-0512
Fax: (304) 342-0513
*Counsel for Plaintiff*